<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KYLE MACK,<br><br>                    *Plaintiff,*<br><br>        v.<br><br>BAYSIDE STATE PRISON, *et al.,*<br><br>                    *Defendants.* | Civil Action No. 24-10757 (KMW) (AMD)<br><br>**OPINION** |

**THIS MATTER** comes before the Court on the motion of Defendants New Jersey Department of Corrections ("NJDOC"), Patrick S. Miller, Administrator of Bayside State Prison ("BSP"), and Keisha Fisher, Administrator of South Woods State Prison ("SWSP") (collectively, "Defendants"), to (1) vacate the Clerk's entry of default against Administrators Miller and Fisher, (2) extend the time for those Defendants to respond to the Amended Complaint, and (3) dismiss the Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 18.) Plaintiff Kyle Mack, opposes the Motion to Vacate and the Motion to Dismiss as to the individual-capacity and *Monell* claims. (ECF No. 22.) The Court resolves the motions on the papers. For the reasons set forth below, the Motion to Vacate the Clerk's entry of default is **GRANTED**, the Defendants' request for extension of time to respond and Plaintiff's motion to reinstate the Clerk's default are **DENIED** as moot, and the Motion to Dismiss is **GRANTED**.

## I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff Kyle Mack is currently incarcerated and as of February 24, 2021, was

incarcerated at Bayside State Prison. (ECF No. 5 ("Am. Compl.") ¶ 14.) At some point thereafter, Mack was placed in a cell with an unnamed individual who, Mack alleges, exhibited erratic behavior—including holding conversations with himself and appearing to be out of touch with reality. (*Id.* ¶¶ 15–18.) Mack made multiple requests to be moved to a different cell, claiming he did not feel safe. (*Id.* ¶ 17.) Despite those requests, Mack remained housed with the same inmate for approximately two months. (*Id.*)

On or about February 27, 2022, at approximately 1:30 a.m., Mack alleges he was violently attacked by his cellmate. (*Id.* ¶ 18–19.) He screamed for help, but no corrections officer responded immediately. (*Id.* ¶¶ 19–20.) The assault resulted in serious injuries to Mack's face, including lacerations that required one hundred stitches and necessitated reconstructive surgery. (*Id.* ¶ 19.)

Following the attack, Mack was transferred to SWSP, which was overseen by Defendant Fisher. (*Id.* ¶¶ 5, 21.) At SWSP, Mack alleges that corrections officers were aware of the assault and retaliated against him by mocking him, threatening him with discipline, and withholding pain medication and antibiotics. (*Id.* ¶¶ 22–24.) He further alleges that when he complained about this treatment, he was threatened with solitary confinement. (*Id.* ¶ 26.)

Mack filed his original Complaint on November 26, 2024, naming Bayside State Prison, South Woods State Prison, and John Doe defendants. (ECF No. 1.) The State Defendants moved to dismiss the original Complaint on December 30, 2024. (ECF No. 3.) On February 4, 2025, before the Court ruled on that motion, Mack filed an Amended Complaint adding the NJDOC, Administrator Miller, and Administrator Fisher as defendants, sued in both their official and individual capacities. (ECF No. 5.)

On February 28, 2025, the Court dismissed BSP and SWSP with prejudice, recognizing both institutions as arms of the State entitled to Eleventh Amendment immunity. (ECF No. 9.)

2

Mack appealed that order on March 28, 2025. (ECF Nos. 11, 12.) On May 15, 2025, the Third Circuit dismissed the appeal for lack of jurisdiction, noting that the February 28 order was not final under 28 U.S.C. § 1291 because it did not resolve all claims as to all parties and had not been certified under Federal Rule of Civil Procedure 54(b). (ECF No. 18-5.)

Administrators Miller and Fisher were served at their places of employment in February 2025. (ECF No. 18-2 ("Adams Cert.") ¶ 4.) Under New Jersey law, however, a state employee is not automatically entitled to representation by the Attorney General's Office; the employee must formally request representation in writing, and a conflict check must be completed before a letter of representation is executed. *See* N.J. Stat. Ann. §§ 59:10A-1 to -6. Here, those letters of representation were not executed until September 19, 2025, for Administrator Fisher, and September 24, 2025, for Administrator Miller. (Adams Cert. ¶ 4.)

On April 17, 2025, Mack moved for a Clerk's order of default as to Defendants Miller and Fisher. (ECF Nos. 13, 14.) However, after communications between counsel, Mack agreed to withdraw both default motions, and that stipulation was entered on April 29, 2025. (ECF Nos. 15, 16.) On October 22, 2025, after counsel for the State Defendants indicated a responsive pleading would be forthcoming but none was filed, Mack requested entry of a Clerk's default a second time, which the Clerk entered. (ECF No. 17.) Defendants filed the instant omnibus motion on October 28, 2025. (ECF No. 18.) Mack filed his opposition on January 6, 2026. (ECF No. 22.) The motion is now ripe before the Court.

## II.    LEGAL STANDARD

### A. Vacation of Default Under Rule 55(c)

Under Federal Rule of Civil Procedure 55(c), a court may set aside a Clerk's entry of default for "good cause." The Third Circuit "does not favor entry of defaults or default

judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) (emphasizing that cases should be disposed of on the merits whenever practicable). To determine whether good cause exists, a court weighs: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default resulted from the defendant's culpable conduct. *Id.* at 194–95.

A meritorious defense exists when the defendant's allegations, if established at trial, would constitute a complete defense. *Mrs. Ressler's Food Prods. V. KZY Logistics LLC*, 675 F. App'x 136, 140 (3d Cir. 2017) (explaining that a defendant must allege specific facts beyond simple denials, but need not satisfy summary judgment standards). The culpability inquiry asks whether the defendant's conduct rose to the level of willfulness or bad faith—more than mere negligence but less than knowing disregard. *Id.* at 141.

## B. Extension of Time Under Rule 6(b)(1)

Where a party's deadline to respond has already passed, Federal Rule of Civil Procedure 6(b)(1)(B) authorizes an extension upon a showing of "excusable neglect." In evaluating excusable neglect, courts consider: the danger of prejudice to the opposing party; the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was within the movant's control; and whether the movant acted in good faith. *Murdock v. Borough of Edgewater*, 600 F. App'x 67, 71 (3d Cir. 2015) (applying the four-factor *Pioneer*[1] analysis to a procedural deadline).

## C. Motion to Dismiss Under Rule 12(b)(1)

Motions asserting Eleventh Amendment immunity are properly analyzed under Federal Rule of Civil Procedure 12(b)(1) because "the Eleventh Amendment is a jurisdictional bar which

---

[1] *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). A facial attack on subject matter jurisdiction challenges the sufficiency of the pleading itself; the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006).

**D. Motion to Dismiss Under Rule 12(b)(6)**

To survive a Motion to Dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Courts apply a two-step analysis: they first separate factual allegations, which are accepted as true, from legal conclusions, which are not entitled to the assumption of truth; and then determine whether the well-pleaded facts plausibly give rise to an entitlement to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678.

**III.    DISCUSSION**

**A. Motion to Vacate the Clerk's Entry of Default and to Extend Time**

The Court addresses the Motion to Vacate the Clerk's default before considering the merits of the competing default request. *See Doe v. City of Jersey City Bd. of Educ.*, No. CV2120223SDWMAH, 2022 WL 1137301, at *2 (D.N.J. Apr. 18, 2022) (finding that vacatur of default renders competing motion for default moot). Here, all three factors weigh in favor of vacatur.

First, Mack will not be meaningfully prejudiced by setting aside the default. He did not oppose the State Defendants' original Motion to Dismiss (ECF No. 3), and rather than await a

ruling on that motion he filed an Amended Complaint (ECF No. 5), then pursued a premature interlocutory appeal (ECF Nos. 11, 12), and later stipulated to vacate the first default he himself requested (ECF Nos. 15, 16).    These circumstances reflect that the delay, while not inconsequential, has not impaired Mack's ability to prosecute his claims.

Second—and most importantly—Administrators Miller and Fisher have meritorious defenses.  As discussed in detail below, they are not "persons" amenable to suit in their official capacities under 42 U.S.C. § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and the Amended Complaint lacks any factual allegations connecting either administrator to the events that injured Mack. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (requiring personal involvement in the alleged constitutional violation).  These defenses would, if established, constitute complete defenses to Mack's claims.

Third, the default did not result from culpable conduct on the Defendants' part.  The delay stemmed from the administrative requirements of New Jersey law governing state-employee representation—namely, the need for each administrator to formally request representation, undergo a conflict check, and execute a letter of representation.  (Adams Cert. ¶ 4.) *See* N.J. Stat. Ann. § 59:10A-2(a)–(c).   That process was not completed until mid-to-late September 2025. (Adams Cert. ¶ 4.)  This is not the "flagrant bad faith" required to support a refusal to vacate default. *Emasco Ins. Co. v. Sambrick*, 834 F.2d 71, 75 (3d Cir. 1987) (holding that conduct must be more than negligent to constitute willful default warranting denial of vacatur).  Nor, given the unique representation requirements applicable to state employees, was the delay "within the reasonable control" of the individual administrators. *Murdock*, 600 F. App'x at 71.

Accordingly, the Clerk's entry of default against Administrators Miller and Fisher is vacated, and the motion for extension of time to respond to the Amended Complaint and Plaintiff's

6

request to reinstate the default are denied as moot.

### B. Plaintiff's § 1983 Claims Are Not Cognizable Against the NJDOC or the Individual Defendants in Their Official Capacities (Counts I and II — Official Capacity)

In Counts I and II of the Amended Complaint, Mack asserts Eighth Amendment claims against the NJDOC and Administrators Miller and Fisher in both their official and individual capacities. Count I alleges cruel and unusual punishment under the Eighth Amendment based on Defendants' alleged deliberate indifference to the known danger posed by his cellmate. (Am. Compl. ¶¶ 32–39.) Count II alleges deliberate indifference as a failure-to-protect claim, asserting that Defendants were on notice of the specific risk posed by Mack's cellmate and failed to act. (*Id.* ¶¶ 40–50.) As to the official-capacity claims in Counts I and II, the Court lacks subject matter jurisdiction.

Under 42 U.S.C. § 1983, "[n]either a State nor its officials acting in their official capacities are 'persons'" subject to suit. *Will*, 491 U.S. at 71. The NJDOC is an agency of the State of New Jersey, and as such is not amenable to suit under § 1983. *See Endl v. State*, 5 F. Supp. 3d 689, 697 (D.N.J. 2014) (holding that a state agency "is not considered a 'person' for purposes of Section 1983 because it is protected by sovereign immunity"). Moreover, an official-capacity suit against a state officer is, in substance, a suit against the State itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Because neither the NJDOC nor the administrators sued in their official capacities are "persons" within the meaning of § 1983, the official-capacity claims in Counts I and II must be dismissed.

### C. The NJDOC Is Entitled to Eleventh Amendment Immunity (Counts I, II, and III)

7

The Eleventh Amendment bars suit against a state or its agencies in federal court absent the state's consent or a valid congressional abrogation. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Third Circuit treats such motions as arising under Rule 12(b)(1). *Blanciak*, 77 F.3d at 693 n.2 (characterizing the Eleventh Amendment as a "jurisdictional bar"). The NJDOC is unambiguously an arm of the State of New Jersey. *See Meyer v. New Jersey*, 460 F.2d 1252 (3d Cir. 1972). Congress did not abrogate state sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

Here, the NJDOC has not consented to suit in federal court. Accordingly, all claims against the NJDOC are dismissed for lack of subject matter jurisdiction.

### D. The Individual-Capacity Claims Fail for Lack of Personal Involvement (Counts I and II — Individual Capacity)

A plaintiff bringing a § 1983 claim must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Supervisory liability under § 1983 cannot rest on the doctrine of *respondeat superior*. *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993). Instead, personal involvement may be shown through allegations of "personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207 (requiring that such allegations be made with appropriate particularity).

The Amended Complaint contains no factual allegations that either Administrator Miller or Administrator Fisher personally directed any correction officer or medical staff member, made any housing determination, issued any order concerning Mack's cell assignment, or had actual knowledge of his requests to be moved prior to the February 2022 attack. (*See* generally Am. Compl.) The allegations that purport to tie these defendants to the underlying violations are entirely conclusory—for example, that "[d]efendants willfully and deliberately ignored Plaintiff's

8

needs for adequate medical treatment." (Am. Compl. ¶¶ 35–36.) Such "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

Mack's opposition argues that it is plausible to infer that, because Miller served as BSP's administrator and Fisher served as SWSP's administrator, each "should have known" of the dangerous condition. (ECF No. 22 at 4.) But the Third Circuit has consistently rejected this type of positional inference. *See Markowitz v. Nicholson*, No. 23-1691, 2023 WL 6241244, at *3–4 (3d Cir. Sept. 26, 2023) (*per curiam*) (affirming dismissal where plaintiff relied on the defendant's supervisory position rather than specific facts demonstrating personal involvement). Indeed, knowledge may only be inferred from pleaded facts, not rank.

The pleading is also deficient as a form of impermissible group pleading. The Amended Complaint asserts collective wrongdoing by unspecified "Defendants" without identifying which specific actions are attributable to Miller and which to Fisher. *See Echevarria v. Cnty. of Bergen*, No. CV 23-3002 (ES) (CLW), 2025 WL 517955, at *5 (D.N.J. Feb. 18, 2025) (prohibiting "[g]roup pleading" that names a litany of defendants without specifying each one's individual conduct); *McCoy v. Scott*, No. CV 23-21272 (KMW) (EAP), 2024 WL 3580662, at *3 (D.N.J. July 29, 2024) (same). This leaves both administrators unable to discern what, precisely, they are accused of doing.

For these reasons, the individual-capacity claims against Administrators Miller and Fisher in Counts I and II are dismissed.

### E. The *Monell* Claim Fails as a Matter of Law (Count III)

Count III asserts a *Monell* claim against the NJDOC and the individual administrators based on alleged policies and procedures at BSP and SWSP that fostered an atmosphere of indifference to inmates' constitutional rights, including Mack's. (Am. Compl. ¶¶ 51–56.)

9

Specifically, Mack alleges that Defendants instituted policies that permitted corrections officers to ignore reasonable inmate complaints about safety and medical care, proximately causing his injuries. (*Id.* ¶¶ 52–54.) This claim fails on multiple independent grounds.

*Monell* liability attaches only to "local governments"—it does not extend to the State or its agencies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The Supreme Court and the Third Circuit have been unequivocal: *Monell* has no application to state entities. *See Will*, 491 U.S. at 70 (holding that states and entities that are "arms of the state" for Eleventh Amendment purposes are not subject to *Monell* liability); *Bruscianelli v. Hicks*, No. CV 20-2631 (FLW), 2021 WL 1139844, at *4 (D.N.J. Mar. 24, 2021) (holding that the NJDOC "is not a local government, and the Court has found no authority to suggest that *Monell* liability may attach to the State or its agencies").

Because the NJDOC is an arm of the State of New Jersey—a fact already established by the Court's February 28, 2025 Order (ECF No. 9)—Count III cannot proceed against the NJDOC. *Monell* liability is unavailable as a matter of law against state agencies. Count III is therefore dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Vacate the Clerk's entry of default against Administrators Miller and Fisher is **GRANTED**. The Defendants' request for extension of time to respond and Plaintiff's cross-motion to reinstate the Clerk's entry of default are **DENIED** as moot. Defendants' Motion to Dismiss is **GRANTED**. All remaining claims—Counts I, II, and III—against the New Jersey Department of Corrections, Administrator Patrick S. Miller, and Administrator Keisha Fisher are **DISMISSED**.

An Order consistent with this Opinion follows.

Hon. Karen M. Williams,
United States District Judge